Dear Mr. Sanner:
This is in response to your letter of July 19, 2004, in which you requested an Attorney General's opinion regarding the following questions:
 1. May the West Cameron Port and Harbor Commission issue permits and leases, without the permission of the State Land Office, on the beds, bottoms and air space above navigable rivers, streams, lakes or bays adjacent to banks of privately or publicly owned lands, within its territorial jurisdiction? If so, may the Commission establish and collect fees and rental charges for these permits and leases? Who is entitled to the funds generated from these permits and leases?
 2. May the West Cameron Port and Harbor Commission, as a "deepwater port" of the Millennium Port Authority, issue permits and leases without the permission of the State Land Office and without the permission of the MPA, on the beds, bottoms and air space above navigable rivers, streams, lakes or bays adjacent to banks of privately or publicly owned lands, within its territorial jurisdiction? If so, may the Commission then establish and collect fees and rental charges for these permits and leases? Who is entitled to the funds generated from these permits and leases?
 3. May the Commission, with the consent of the Millennium Port Authority, but without the permission of the State Land Office issue the permits and leases as set forth above? If so, who is entitled to the funds generated from these permits and leases?
In addressing your questions, it will be assumed that the beds and bottoms of the navigable water bodies you described are those beds and bottoms owned by the State of Louisiana, the so-called state-owned water bottoms. This opinion does not address any privately-owned portions of water bottoms.
In order to render an opinion, two underlying, basic questions must be examined and answered, as follows:
 1. DOES THE WEST CAMERON PORT AUTHORITY HAVE THE SAME LEASING AUTHORITY AS THE MILLENIUM PORT AUTHORITY?
The Millennium Port Authority("MPA") was created as a political subdivision by Act No. 1225 of the 1999 Regular Session (La.-R.S.34:3471, et seq.) to develop, finance, construct, operate and maintain onshore and offshore terminal facilities necessary to accommodate deep draft container vessels and their cargoes, in accordance with a comprehensive authority development program. La.- R.S. 34:3471, 3472(14), and 3472(1). That the MPA is its own political subdivision, separate and apart from any other port authority or commission, is shown by the following: First, although the jurisdiction of the MPA extends throughout the state, as necessary to effectuate its purposes (La.-R.S. 34:3473(A)(1)), its jurisdiction does not extend to those facilities within the jurisdiction of existing port authorities, port, harbor and terminal districts, or the offshore terminal authority. La.-R.S. 3473(A)(2). Second, the MPA does not have any authority to limit, restrict, or prevent the ability of any other port authority, harbor and terminal district, or offshore terminal authority, to construct, maintain, operate, expand or create any facility within its jurisdiction. La.-R.S. 34:3473(A)(4). Third, La.-R.S.34:3473(E) states that the domicile of the MPA shall be in Baton Rouge until such time as the site for the millennium port is selected. These statutes contemplate the siting, construction, and operation of new terminal facilities, separate and apart from those of any existing port authority or commission.
The only real connection between the West Cameron Port Commission ("WCPC") and the MPA is that the WCPC is required to submit the name of one nominee to serve as an appointed voting commissioner of the MPA. La.-R.S. 34:3474(B)(2)(b). Aside from this nominating process, there is no language within either the Millennium Port Authority Act or the WCPC enabling legislation which refers to the WCPC as constituting any part of the MPA or as having any of the rights or authority enjoyed by the MPA.
The West Cameron Port, Harbor and Terminal District was created as a political subdivision under La.-R.S. 34:2551, et seq., and the powers of its governing commission, including any leasing and permitting authority, are limited to those specified in La.-R.S.34:2553; except that, La.-R.S. 41:1705(1) specifically recognizes the continuing right of any deepwater port authority to issue permits to construct, create, alter, improve, extend, or maintain any wharf, pier, dock, structure or other improvement upon state-owned water bottoms located within the territorial jurisdiction of the port authority.
2. Does the West Cameron Port Commission have authority to lease,as lessor, state-owned water bottoms?
With a few specific exceptions, such as mineral and oyster leases, the State Land Office is responsible for the control, permitting, and leasing of encroachments upon public lands and water bottoms, and for creating an overall and comprehensive plan for the preservation of state lands. La.-R.S. 41:1701 and 1703.
In addition to its leasing authority, the State Land Office is generally responsible for granting permits to ". . . construct, create, alter, improve, extend, or maintain any wharf, pier, dock, bulkhead, landfill, structure, or other encroachment . . ." La.-R.S. 41:1706(A). That permit authority, however, does not extend to structures or improvements within the jurisdiction of the state's deepwater port commissions; under the provisions of R.S. 41:1705, a deep-water port commission, and not the State Land Office, has exclusive jurisdiction to grant all permits for constructing, creating, altering, improving, extending or maintaining any wharf, pier, dock, structure, or other improvement within its jurisdiction. Section 1705(1) reads as follows:
Application of Chapter; exemptions
This Chapter shall not apply to:
 (1) Piers, wharves, structures or other improvements within the jurisdiction of any deepwater port commission of this state, including but not restricted to the authority to grant permits to construct, create, alter, improve, extend, or maintain any wharf, pier, dock, structure, or other improvement, and the granting of any permit for any of such purposes shall be and remain in the deep-water port commissions as to any such activity heretofore or hereafter performed or for which permit heretofore was or hereafter is sought.
It is important to recognize the distinction between a permit and a lease, as applied to state-owned water bottoms. Although a deep-water port commission has authority, under its enabling legislation and under R.S. 41:1705(1), to issue permits to construct and operate improvements on state-owned water bottoms, no port commission, unless specifically authorized in its enabling statutes, has any authority to lease the underlying state-owned water bottom to anyone. Although R.S. 41:1705(1) specifically prohibits the State Land Office from exercising its permit
authority within the territorial jurisdiction of a deepwater port, that statute contains no language which would prohibit the State Land Office from exercising its authority to lease the state water bottom underlying those structures, within the same jurisdiction.
Under La.-R.S. 34:2553, the West Cameron Port Commission does have the authority to ". . . lease or sublease for processing, manufacturing or commercial business purposes any lands or buildings owned, acquired or leased as lessee by it . . .;" however, those state-owned water bottoms located within the port commission's
jurisdiction are not "owned, acquired or leased as lessee" by the commission, but remain public things, owned and managed by the State in its sovereign capacity, and
incapable of being alienated. Gulf Oil Corporation v. StateMineral Board, et al., 317 So.2d 576 (La. 1975). Thus, the port commission has no statutory authority to lease, as lessor, any state-owned water bottoms to anyone.
Port authorities generally not having authority to lease state-owned water bottoms within their jurisdictions, an interpretation of La.-R.S. 41:1705(1) to prohibit the State Land Office from leasing state-owned water bottoms within the same jurisdiction would have the undesirable and unintended effect of allowing a third party the gratuitous use and possession of state-owned water bottoms without making any lease payment whatsoever. Allowing individuals to use and possess state-owned water bottoms as "squatters," without the state receiving any remuneration, would be in violation of La.-Const. Article 7, Section 14(A), which prohibits the donation of assets of the state, and could also be considered a prohibited alienation of state water bottoms, in violation of La.-Const. Article 9, Section 3. See Attorney General's Opinion dated March 26, 1990, to Mr. Glen Kent, a copy of which is attached hereto. Therefore, such an interpretation of La.-R.S. 41:1705(1) would be unreasonable, possibly render the statute itself unconstitutional, and would subvert the statute's intended effect, which is simply to substitute a deepwater port commission for the State Land Office as the permitting authority within the territorial jurisdiction of the port commission. In the event of ambiguity, a statute should be interpreted in light of the State's strong public policy and in such a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it.Gulf Oil Corporation, supra; SWAT 24 Shreveport Bossier, Inc., v.Bond, 808 So.2d 294 (La. 2001). This statute does not substitute a port authority as the leasing authority, nor does it prohibit the State Land Office from leasing such water bottoms, as lessor. An individual, corporation, political subdivision, or other entity would lease the water bottom from the State Land Office, and contemporaneously obtain from the West Cameron Port Commission a permit for the proposed construction, use and maintenance of a wharf, pier, dock, structure or other improvement upon or over the water bottom.
Conclusion
Based upon the above analysis, it is the opinion of the Attorney General that:
The West Cameron Port Commission is not a part of the Millennium Port Commission, and the West Cameron Port Commission does not have the same leasing rights as the Millennium Port Commission. The West Cameron Port Commission has only those leasing rights granted to it in its own enabling legislation, La.-R.S. 34:2553.
The West Cameron Port Commission has the exclusive authority and responsibility, within its territorial jurisdiction, to issue permits for the construction, creation, alteration, improvement, extension or maintenance of any wharf, pier, dock, structure or other improvement. Since this permitting authority is granted to the port commission by its enabling legislation and by R.S.41:1705, it is not necessary for the port commission to obtain anyone's permission to issue such permits or to charge reasonable fees for such permitting services under La.-R.S. 34:2553(12).
The West Cameron Port Commission does not have the authority to lease to third parties any of the state-owned water bottoms lying within the port commission's territorial jurisdiction, that authority being reserved to the State Land Office.
Since the West Cameron Port Authority lacks the statutory authority to lease, as lessor, state-owned water bottoms, it is unnecessary to determine the recipient of such lease proceeds. With regard to permit fees, those would presumably be received by the port commission, deposited, and disposed of, in the same manner as the other use and service fees currently being collected by the commission under authority of 34:2553(12), (13), and (14). The District Attorney, as legal counsel for the port commission, can best advise the commission on the permitted use and disposition of such income.
Should you have any questions, please feel free to contact the undersigned.
Sincerely,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: _____________________________
 Terry F. Hessick
Assistant Attorney General
CCF, Jr./TFH/tp
 State of Louisiana DEPARTMENT OF JUSTICE LANDS AND NATURAL RESOURCES DIVISION POST OFFICE BOX 94095 Baton Rouge, Louisiana, 70804-9095 March 26, 1990
WILLIAM J. GUSTE, JR. TELEPHONE (504) 342-7900 ATTORNEY GENERAL
Mr. Glen Kent Public Lands Administrator State Land Office — Division of Administration 12th Floor — DNR Building Baton Rouge, Louisiana
Messenger
RE: House Concurrent Resolution No. 56
Dear Mr. Kent:
You have advised this office that under the provisions of La. R.S. 41:1701-1714, the Office of State Lands is responsible for the control, permitting, and leasing of encroachments upon public: lands including the beds and bottoms of all navigable waters. Pursuant to these statutes your office has charged rentals to occupiers of encroachments through a permitting and leasing process enumerated in these statutes. La. R.S. 41:1707 pertains to permits and La. R.S. 41:1709 pertains to the leasing of unauthorized encroachments.
You have further advised that by virtue of House Concurrent Resolution No. 56 enacted during the regular session of 1989, the provisions of La. R.S. 41:1709 (A) were suspended until such time as the legislature jointly meets to study the charging of rentals by the Office of State Lands or its successor for encroachments on State waterbottoms.
In connection with your duties you have first asked this office as to the effect of the suspension of a law which authorizes the state to collect a fee or charge for the use of its property. Secondly, in any event, you have asked this office what steps the State Land Office should take concerning unauthorized encroachments on State lands.
It is the opinion of this office that if certain structures are existing on State waterbottoms without benefit of a lease or permit of any kind, the individuals are trespassers upon State land subject to eviction as would be the case with any unauthorized possessor of property.
Moreover, and more importantly, allowing individuals to possess State property without the state receiving remuneration of any kind would be in violation of Article VII, Section 14 (A) of the 1974 Constitution which prohibits the donation of assets of the state.
It would seem to us that legislation designed specifically to prevent the state from receiving revenue for the use of its property would be unconstitutional from this article alone, but, in addition, we are of the opinion that allowing individuals to possess and occupy State waterbottoms without charge is an alienation thereof in violation of Article IX, Section 3 of the 1974 Constitution.
Furthermore, regardless of the constitutionality of any law passed by the legislature prohibiting the charging of a fee for the use of State property, we are of the belief that you, as public lands administrator, are under a duty to see that unpermitted and unauthorized works on State waterbottoms are removed. We refer you specifically to Article 458 of the Louisiana Civil Code which states:
 Works built without lawful permit on public things, including the sea, the seashore, and the bottom of natural navigable waters, or on the banks of navigable rivers, that obstruct the public use may be removed at the expense of the persons who built or own them at the instance of the public authorities, or of any person residing in the state.
 The owner of the works may not prevent their removal by alleging prescription or possession.
If we may be of further service in this matter, please advise.
Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
BY: ___________________
 DAVID C. KIMMEL Assistant Attorney General
DCK: moj